# Illinois Official Reports

## Appellate Court

*People v. Deramus*, 2014 IL App (1st) 130995

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CURTIS DERAMUS, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-0995 |
| Filed | September 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for delivery of a controlled substance was upheld on appeal, notwithstanding his contentions that the trial court erred in instructing the jury not to consider as substantive evidence one police officer's inconsistent statement in his police report as to the color of jeans defendant was wearing at the time of his arrest and that the prosecutor made improper and prejudicial statements in his opening statement and closing arguments, including statements that police officers came out of retirement to testify against defendant and that defendant was ruining his neighborhood by dealing drugs on the street, since even though the inconsistent statement about the color of defendant's jeans was substantive evidence, the exclusion of the evidence was harmless and the prosecutor's comments were either not improper or did not result in prejudice. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-17677; the Hon. Thomas J. Hennelly, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Chan Woo Yoon, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Tasha-Marie Kelly, and Phyllis Warren, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment and opinion. |

## OPINION

¶ 1    A jury convicted defendant Curtis Deramus of delivery of a controlled substance after the State presented evidence that he sold heroin to an undercover police officer. Defendant appeals his conviction, asserting: (1) that the trial court erred in instructing the jury to consider a prior inconsistent statement made by a police officer only as impeachment evidence because the statement was substantively admissible; and (2) that the prosecutor made improper and prejudicial statements in his opening statement and closing argument. We conclude that, although the officer's prior inconsistent statement was substantively admissible, the exclusion of such evidence was harmless. We also conclude that the prosecutor's comments were either not improper or did not prejudice defendant. We affirm defendant's conviction.

¶ 2                                    I. BACKGROUND

¶ 3    Officer Edward Daniels of the Chicago police department testified that, around 9:40 a.m. on September 22, 2011, he and a group of officers went to the intersection of 62nd Street and Martin Luther King Drive in order to "gather information on the violence that had been taken [*sic*] place in that neighborhood." Daniels explained that he and the other officers sought to perform a "buy-bust," in which the officers would conduct an undercover purchase of narcotics, arrest the dealer, and then question the dealer about violence in the neighborhood. Daniels served as the surveillance officer for the "buy-bust," while Officer Ervin Ternoir conducted the undercover purchase and Officer Myron Kuykendall acted as the arresting officer.

¶ 4    Daniels parked his vehicle near 62nd Street and Martin Luther King Drive and saw defendant standing 40 to 50 feet away. Daniels testified that he saw an unknown person approach defendant and speak to him. Daniels could not hear what the person said to defendant. Defendant then walked to a wrought iron fence, bent down, removed items from a bag, put the bag back on the ground, and gave the items to the person. The unknown person gave defendant money and left. Daniels testified that, soon after this transaction, he saw

- 2 -

defendant engage in two similar transactions. Daniels then radioed Ternoir and described defendant's location and clothing. Daniels testified that defendant was wearing dark blue jeans, a gray jacket, and a baseball cap.

¶ 5    Officer Ternoir, dressed in plain clothes, drove south on Martin Luther King Drive, when he saw defendant walking north. Ternoir honked his car horn and held up two fingers to defendant. Ternoir testified that defendant directed him to turn onto 62nd Street and park. After Ternoir parked, defendant crossed the street and retrieved something from the ground near a wrought iron fence. Defendant approached Ternoir's car and handed him two plastic bags that contained white powder and bore blue dolphin logos. Ternoir gave defendant a prerecorded $20 bill and left.

¶ 6    On cross-examination, Ternoir testified that defendant was wearing a gray cap, a gray jacket, and blue jeans during the transaction. Defense counsel impeached Ternoir regarding the color of the suspect's pants with his report of the incident:

> "Q. [Defense counsel:] Officer, isn't it true that the description you wrote in your report for the person that was walking down the street was gray cap, gray jacket and black jeans?
>
> A. [Officer Ternoir:] Yes.
>
> Q. But you just stated that the person was [*sic*] gray cap, gray jacket wearing blue jeans. Isn't that true, Officer?
>
> A. That's my mistake then. If that's in my report, it is black jeans."

After defense counsel elicited this testimony, the trial court *sua sponte* told the jury to consider the statement in Ternoir's report only as impeachment evidence:

> "Ladies and gentlemen, the police report that counsel used was used for a very limited purpose. It was used for purposes of impeachment. Police reports are hearsay documents. They are not evidence. They are never admitted into evidence.
>
> At the conclusion of the trial you will not be receiving that police report back during your deliberations, so please don't send me a note saying where is Officer Ternoir's report because you will not be getting it."

Defense counsel did not seek to introduce Ternoir's report as substantive evidence or object to the trial court's instruction.

¶ 7    Daniels continued to observe defendant after Ternoir had left. Daniels testified that he saw defendant engage in four more transactions with unknown individuals that were similar to the transactions he had witnessed before. After the fourth transaction, Daniels radioed Officer Kuykendall.

¶ 8    Kuykendall testified that he detained defendant near 6245 South Martin Luther King Drive. Kuykendall testified that defendant was not doing anything illegal and did not try to run when he detained him. Kuykendall patted defendant down and recovered $102, including the prerecorded $20 bill that Ternoir had used in his undercover transaction. He did not recover any narcotics from defendant. After arresting defendant, Kuykendall went to the wrought iron fence and found a bag containing 11 bags of white powder with blue dolphin logos on them. Kuykendall testified that defendant was questioned about violent crimes in the area but that defendant had no information.

¶ 9 Illinois State Police forensic scientist Paul Titus, who was retired at the time of trial, testified that he analyzed 1 of the 2 bags given to Ternoir and 6 of the 11 bags recovered from the fence. They tested positive for the presence of heroin.

¶ 10 Defendant called Monique Serino-White, an investigator employed by defense counsel, to testify that the distance between 401 East 62nd Street, the location of the undercover purchase, and 6245 South Martin Luther King Drive, the location of defendant's arrest, was 430 feet. She measured this distance using a calibrated digital measuring wheel.

¶ 11 Michael Holmes, assistant executive director of the Cook County department of corrections, testified regarding the procedures employed for processing an individual's personal property when he or she is arrested. Holmes stated that, when a person is brought into Cook County jail, his or her clothing is taken and officers enter the type of clothing into the jail's computer system. A report recording defendant's clothing at the time of his arrest stated that defendant wore gray pants, a gray jacket, and a white shirt. A hat was not entered into the system. Holmes testified that he had never seen an entry in the system for a hat.

¶ 12 Defendant testified that, on the morning of September 22, 2011, he was wearing a gray jacket, a white shirt, and gray pants. He walked his stepson and nephew to the bus stop at 62nd Street and Martin Luther King Drive, then went to the store to buy cigarettes. Upon exiting the store, he noticed a group of people playing dice and gambling. Defendant joined the game and played for 30 to 60 minutes, when someone said the police were coming.

¶ 13 Defendant grabbed money from the ground and walked south. He did not know how much money he had taken. As he crossed 63rd Street, a police car stopped and an officer emerged with his gun drawn. The officer patted defendant down and found the money he had grabbed at the dice game. The officer placed defendant in the back of his car. Defendant denied selling narcotics to Officer Ternoir and denied being in possession of narcotics on September 22, 2011. Defendant did not recognize the bags with blue dolphin logos on them.

¶ 14 During a jury instructions conference, the State and defense indicated that the court did not need to instruct the jury regarding any prior inconsistent statements. The court disagreed, stating, "I think that the Officer was impeached with his report," and, "There was a mistake, so I think it's an appropriate instruction." Following closing arguments, the trial court read the following instruction to the jury regarding prior inconsistent statements:

> "The believability of a witness may be challenged by evidence that on some former occasion, he made a statement that was not consistent with his testimony in this case. Evidence of this kind ordinarily may be considered by you only for the limited purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom."

Defense counsel did not object to this instruction.

¶ 15 During deliberations, the jury sent out three notes. One asked the court to define the term "possession." The second note indicated that the jury could not reach a consensus. The third note came from an individual juror asking to be excused because of the other jurors' "preconceived ideas." After further deliberations, the jury convicted defendant of the delivery of controlled substance charge that related to the undercover sale to Officer Ternoir, but acquitted him of the possession of a controlled substance charge related to the 11 bags of heroin recovered from the fence. Defendant appeals.

## II. ANALYSIS

Defendant contends that a new trial is necessary because the trial court committed plain error in instructing the jury to consider Officer Ternoir's prior inconsistent statement only as impeachment evidence and the prosecution made improper comments in its opening statement and closing argument. We address each of these contentions in turn.

### A. Prior Inconsistent Statement

Defendant first argues that the trial court erred in instructing the jury that it should not consider as substantive evidence Officer Ternoir's prior statement, contained in his police report, that the person who sold him heroin was wearing black pants. Defendant maintains that this statement was substantively admissible as a prior inconsistent statement that Ternoir acknowledged making at trial. The State contends that defendant forfeited this issue for review by failing to object to the instructions at trial, that the prior statement was not substantively admissible because it was not inconsistent with Ternoir's trial testimony, and that any error in the court's instructions was harmless. Although we agree with defendant that Ternoir's prior statement was substantively admissible, we find that the trial court's instructions were harmless.

Turning first to the State's forfeiture argument, defendant recognizes that he forfeited this issue by not objecting to the trial court's instructions at trial. Defendant asserts that we should consider the trial court's error under the plain-error exception to forfeiture. Ill. S. Ct. R. 615(a); *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). "The first step of plain-error review is determining whether any error occurred." *Thompson*, 238 Ill. 2d at 613. We thus turn to whether the trial court erred in instructing the jury to consider the report only as impeachment evidence.

Defendant avers that we should review this issue *de novo* because it does not require the resolution of any factual disputes. We disagree. "This court will not disturb the trial court's tendered jury instructions absent an abuse of discretion." *People v. Nash*, 2012 IL App (1st) 093233, ¶ 26. Similarly, "[a] court's decision to exclude evidence is reviewed for abuse of discretion." *People v. Baez*, 241 Ill. 2d 44, 110 (2011). We thus review the trial court's decision to instruct the jury not to consider Ternoir's report as substantive evidence for an abuse of discretion.

Section 115-10.1 of the Code of Criminal Procedure of 1963 provides that a prior statement of a witness may be admitted as substantive evidence if:

"(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement–

\*\*\*

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness[.]" 725 ILCS 5/115-10.1 (West 2012).

At trial, Ternoir initially testified that the person he purchased drugs from wore blue jeans. On cross-examination, defense counsel confronted Ternoir with a copy of his report of the incident, which stated that the suspect wore black jeans. When counsel asked Ternoir whether

he had testified on direct examination that the suspect had blue jeans, Ternoir stated, "That's my mistake then. If that's in my report, it is black jeans." The trial court then instructed the jury that "the police report that counsel used was used for a very limited purpose. It was used for purposes of impeachment." The court told the jury that "[p]olice reports *** are not evidence," and told the jury not to request a copy of the report during its deliberations. The trial court later read a portion of Illinois Pattern Jury Instructions, Criminal, No. 3.11, instructing the jury that it should consider Ternoir's report "only for the limited purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom." Illinois Pattern Jury Instructions, Criminal, No. 3.11 (4th ed. 2000). Defendant asserts that delivering these instructions constituted plain error because the statement in Ternoir's report was admissible under section 115-10.1.

¶ 24    The State contends that Ternoir's prior statement was not inconsistent because he admitted that he was mistaken about the color of defendant's pants after being confronted with his police report. Contrary to the State's contention, "[a] witness'[s] prior testimony *** does not have to directly contradict testimony given at trial to be considered inconsistent within the meaning of that term set out in section 115-10.1." *People v. Flores*, 128 Ill. 2d 66, 87 (1989). Rather, inconsistency under section 115-10.1 " 'may be found in evasive answers, *** silence, or changes in position.' " *Id.* (quoting *United States v. Williams*, 737 F.2d 594, 608 (7th Cir. 1984)).

¶ 25    Here, Ternoir initially testified that defendant was wearing blue jeans at the time of his arrest. In his report, however, Ternoir wrote that the suspect wore black jeans. After defense counsel showed Ternoir his report, he admitted his testimony was mistaken and that, if his report said the suspect wore black jeans, the suspect wore black jeans. While Ternoir's testimony did not directly conflict with his prior statement regarding the color of the suspect's pants, this change in position may be considered inconsistent for purposes of section 115-10.1.

¶ 26    Critically, "[t]he determination of whether a witness'[s] prior testimony is inconsistent with his present testimony is left to the sound discretion of the trial court." *Flores*, 128 Ill. 2d at 87-88. During the jury instruction conference, the trial court stated, "I think that the Officer was impeached with his report," acknowledged that Ternoir said he made a mistake, and elected to give the Illinois Pattern Jury Instruction dealing with prior inconsistent statements. The trial court thus found that Ternoir's report was inconsistent with his trial testimony. In light of Ternoir's change of position during his testimony, we cannot say that the trial court's determination that Ternoir's police report was inconsistent with his testimony was arbitrary, fanciful, or unreasonable. See *People v. Kladis*, 2011 IL 110920, ¶ 23 ("A trial court abuses its discretion when its decision is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." (Internal quotation marks omitted.)).

¶ 27    As Ternoir's police report was inconsistent with his testimony, it was admissible as substantive evidence if he was subject to cross-examination regarding the statement, the statement described a matter of which he had personal knowledge, and it was proved that Ternoir wrote it. 725 ILCS 5/115-10.1(b), (c)(2)(A) (West 2012). The State does not dispute the presence of these elements. Ternoir was subject to cross-examination regarding the statement during defendant's trial and he had personal knowledge of the clothing that the suspect wore. Ternoir also acknowledged that he wrote the report containing the inconsistent statement. Ternoir's prior inconsistent statement in his police report was thus substantively admissible under section 115-10.1.

¶ 28 We now turn to whether any error in the trial court's instructions requires reversal. Although defendant raises his claim under the doctrine of plain error, there can be no plain error if an error is harmless. *People v. Naylor*, 229 Ill. 2d 584, 602 (2008). We thus consider whether the trial court's exclusion of Ternoir's statement as substantive evidence constituted harmless error. See *People v. Leach*, 2012 IL 111534, ¶ 141 (considering an unpreserved claim of error "under the rubric of harmless error, aware that if an error was harmless, it most certainly cannot rise to the level of plain error").

¶ 29 "When deciding whether error is harmless, a reviewing court may (1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008). "Error in the exclusion of hearsay testimony is harmless where the excluded evidence is merely cumulative of other evidence presented by the parties." *People v. Caffey*, 205 Ill. 2d 52, 92 (2001).

¶ 30 In this case, Ternoir's report was cumulative of his live testimony. After being confronted with his report, Ternoir conceded, "If that's in my report, it is black jeans." Ternoir thus testified–independently of his report–that the suspect wore black jeans. The trial court then instructed the jury to consider Ternoir's *police report* for its impeaching effect only, not to disregard the substance of Ternoir's testimony regarding the color of the suspect's pants: "Ladies and gentlemen, the *police report* that counsel used was for a very limited purpose. It was used for purposes of impeachment. *Police reports* are hearsay documents. They are not evidence." (Emphases added.) In her closing argument, defense counsel was permitted to argue that Ternoir testified that the dealer wore black pants: "If you believe Officer Ternoir, it was black, and Officer Daniels said blue." Admitting Ternoir's report as substantive evidence would have duplicated his concession that the suspect was wearing black pants at the time of the offense.

¶ 31 Ternoir's report would have also been cumulative of the other evidence that the suspect's pants were not gray. Defendant's theory of the case was that the police arrested the wrong person for selling drugs to Ternoir. To support this theory, defendant presented evidence at trial that he wore gray pants at the time of his arrest. Daniels testified that the person he saw selling narcotics wore blue jeans. Ternoir initially testified that the person who sold him heroin wore blue jeans. Ternoir's report, which stated that the suspect wore black pants, would have simply provided additional evidence that the dealer was wearing different colored pants than him. As Ternoir's report would have been cumulative of the evidence supporting defendant's case, we conclude that any error in the trial court's instructions was harmless.

¶ 32 B. Prosecutorial Misconduct

¶ 33 Defendant also contends that the prosecution engaged in misconduct in its opening statement and closing arguments by suggesting that he played a significant role in the drug trade, that police officers came out of retirement just to testify against him, and that defendant was ruining his neighborhood by dealing drugs. The State contends that defendant forfeited this issue, that the prosecution's statements were proper, and that defendant was not prejudiced by the statements.

¶ 34 Defendant acknowledges that he forfeited his challenge to the prosecutor's statements but urges us to review his claim as plain error. Ill. S. Ct. R. 615(a); *Thompson*, 238 Ill. 2d at 613.

We first examine whether the contested statements constituted error. See *Thompson*, 238 Ill. 2d at 613 ("The first step of plain-error review is determining whether any error occurred.").

¶ 35 There is a conflict regarding the correct standard for reviewing a prosecutor's remarks during argument. *People v. Daniel*, 2014 IL App (1st) 121171, ¶ 32. In *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007), and *People v. Sims*, 192 Ill. 2d 592, 615 (2000), the Illinois Supreme Court suggested that we should review this issue *de novo*. In *People v. Hudson*, 157 Ill. 2d 401, 441 (1993), however, the court suggested that we should review this issue for an abuse of discretion. We need not take a position in this case, as defendant's claim fails under either standard.

¶ 36 During opening statements and closing arguments, prosecutors have a great deal of latitude and may comment upon and draw reasonable inferences from the evidence presented. *Hudson*, 157 Ill. 2d at 441. The prosecution may not "argue assumptions or facts not based upon the evidence in the record." *People v. Johnson*, 208 Ill. 2d 53, 115 (2003). We must view the allegedly improper remarks in their entirety and in context. *People v. Williams*, 192 Ill. 2d 548, 573 (2000); *People v. Armstrong*, 183 Ill. 2d 130, 146 (1998). We first examine whether each of the prosecution's remarks were improper, then turn to whether defendant suffered prejudiced due to any improper comments.

¶ 37                               1. *Comments Regarding Defendant's*
                                    *Involvement in the Drug Trade*

¶ 38 Defendant first argues that the following remarks in the State's opening statement were improper:

> "Folks, this case is going to take you to a place you may or may not have ever seen before. Most likely not. *The seedy underbelly of the City of Chicago, the criminal drug dealing underworld*.
>
> Ladies and gentlemen, there is a heroin dealer in this courtroom, and he is sitting right over here.
>
> You see, ladies and gentlemen, on September 22nd of last year, 2011, about 62nd and Martin Luther King Drive, about a quarter to ten in the morning, city's South Side, *in an effort to combat violence that had occurred in that neighborhood shortly before*, Chicago police officers from the narcotics section of the Chicago Police Department, plain clothes guys, unmarked cars, went over to that neighborhood in order to catch a drug dealer." (Emphases added.)

Defendant contends that these statements improperly characterized him as a "major player in the drug trade" and "emphasized the relationship between drugs and violence."

¶ 39 "An opening statement may include a discussion of the expected evidence and reasonable inferences from the evidence." *People v. Kliner*, 185 Ill. 2d 81, 127 (1998). "[I]t is improper for counsel to make opening statements about testimony to be introduced at trial and then fail to produce that evidence." *Id.* The prosecution may comment upon evidence of drug dealing in opening remarks if it expects to produce evidence of drug dealing during trial. *E.g.*, *People v. Smith*, 139 Ill. App. 3d 21, 28 (1985) (prosecutor did not err in commenting upon defendant's drug dealing in opening remarks because "the State did adduce evidence that the defendant had killed [the victim] because [the victim] attempted to usurp some of defendant's drug trade").

¶ 40　　In this case, the prosecution's references to the "seedy underbelly" of Chicago and the "criminal drug dealing underworld" were not improper because it anticipated producing evidence at trial that defendant dealt drugs. The State then produced such evidence: Officer Daniels testified that he witnessed defendant conduct several drug transactions and Officer Ternoir testified that he purchased two bags of heroin from defendant while working undercover. Contrary to defendant's contention, the State did not directly accuse defendant of being a "major player" in the drug trade. Although the prosecutor's use of the terms "seedy underbelly" and "criminal underworld" was hyperbolic, it was reasonable to connect defendant to drug dealing in light of the evidence the State correctly anticipated it would produce.

¶ 41　　The prosecution's comment about "violence *** in that neighborhood" was also not improper. The prosecution anticipated that the officers would testify that they organized the undercover narcotics purchase in an attempt to gather information regarding violence in the neighborhood. At trial, Daniels testified that he and the other officers originally went to 62nd Street and Martin Luther King Drive to investigate violent events. The prosecution's comment was thus supported by the evidence it adduced at trial.

¶ 42　　Defendant contends that the prosecution's elicitation of testimony regarding the unspecified violence in the neighborhood exacerbated the prejudicial effect of its comment regarding that violence. Defendant has forfeited any challenge to the admissibility of this evidence, however, as he did not include such a claim in his posttrial motion and does not articulate any basis for excluding this evidence on appeal. See *People v. Woods*, 214 Ill. 2d 455, 470 (2005) ("[A] defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve any alleged error for review."); *People v. Newbern*, 276 Ill. App. 3d 623, 629 (1995) ("[A]ny issue not clearly defined and sufficiently presented [on appeal] is *** deemed [forfeited]."). Even if defendant had preserved this issue, we disagree that the prosecution prejudiced him by eliciting this evidence. Neither the prosecution nor the officers stated that defendant was involved in any of these violent acts or otherwise implied that defendant committed violent acts in the past. See *People v. Pikes*, 2013 IL 115171, ¶ 25 (stating that the defendant was not prejudiced by the admission of evidence of other crimes where the evidence showed that defendant was not involved in the other crime and "[t]he prosecution did not suggest otherwise to the jury"). In fact, Officer Kuykendall testified that defendant did not give them any information about the violent events when he was questioned. The prosecutor's elicitation of such evidence was not improper or prejudicial.

¶ 43　　Defendant next argues that the prosecution improperly emphasized his involvement in the drug trade by referring to him as a "businessman" and comparing the blue dolphin labels found on the bags of heroin to the logos of McDonald's or Burger King. We disagree.

¶ 44　　This court has held that it is not improper for a prosecutor to refer to the defendant in a drug case as a "businessman" or to highlight the defendant's profit motive where there is evidence showing that the defendant sold narcotics. *E.g.*, *People v. Willis*, 409 Ill. App. 3d 804, 811-13 (2011) (prosecutor's characterizing defendant as a drug dealer and urging the jury to "[p]ut him out of business" was not improper because "it was a reasonable inference that [defendant] was [trying] to make money off of selling drugs" (internal quotation marks omitted)); *People v. Bell*, 343 Ill. App. 3d 110, 115 (2003) (prosecutor did not engage in misconduct by characterizing defendant "as a 'businessman' whose work 'destroys our children, our family,' and 'our lives' " where the evidence showed that defendant sold drugs across the street from a church). In this case, Officer Daniels testified that he saw defendant engage in several

hand-to-hand transactions in which he received money. Officer Ternoir testified that, in one of these transactions, he purchased two bags of heroin from defendant for $20. It was permissible for the prosecutor to characterize defendant as a "businessman" in light of this evidence.

¶ 45 Similarly, the prosecutor's reference to the blue dolphin logo was not improper in light of the evidence that the bags of heroin sold to Ternoir bore that identifier. Contrary to defendant's contention, the State did not compare the use of the blue dolphin logo to McDonald's and Burger King in order to "suggest[ ] that [defendant's] alleged drug dealing in the neighborhood was akin to a huge corporate operation flooding the area with its products." Rather, the prosecution made that comparison in order to argue that the logo's presence on all of the recovered bags proved that defendant possessed all of them, just as companies use logos to distinguish their products:

"They have the same exact logo, blue dolphin, that Officer Ternoir had, the two packages that this Defendant delivered, because this is this businessman's brand.

You know McDonald's has a brand, and you will see the M on the fries, and you know that's McDonald's. Burger King has their brand, and their logo, and their copyright, and you know the King is their fries.

Well, you can use your common sense. This is a brand. This shows the dolphin. This is his product. This is what he sells, and buyers know where to get it, right there on the street. They know where to find him, and he had seven buyers he was selling to."

The prosecution did not intimate that defendant was a "huge corporate operation" at any point in its argument. To the contrary, the prosecutor subsequently conceded that its evidence showed that defendant sold less than one gram of heroin to Officer Ternoir. Viewed in context, the prosecutor's comparison of the blue dolphin logo to a corporate logo was not improper.

¶ 46 Defendant also challenges the prosecutor's argument that defendant would not have been afraid to leave narcotics unattended because it was "his corner" and "his block." We do not agree with defendant that this remark carried an implication "that the residents of the neighborhood lived in such fear of [defendant] that he could walk away from the bag of drugs and not worry about anyone taking them." The State never said that the residents of the neighborhood lived in fear of defendant. Rather, the prosecutor argued, "[W]hen you have your dope *hidden under a fence*, *** I don't think there is any concern whatsoever about walking away from it. No one is going to take it. Why? Because that's his corner. It's his block." (Emphasis added.) Viewed in context, the prosecutor argued that defendant would not have been concerned with leaving the narcotics because they were hidden. This was a reasonable inference in light of the evidence that defendant retrieved heroin from a bag at the base of a fence. The prosecutor's reference to "his corner" and "his block" could have simply referred to defendant's familiarity with the area and his hiding place. At no point did the prosecutor improperly argue that the neighborhood lived in fear of defendant.

¶ 47 Defendant cites *People v. Terry*, 312 Ill. App. 3d 984 (2000), in support of his argument that the prosecution's comments about his involvement in drug dealing were improper. *Terry* is distinguishable from this case. In *Terry*, the defendant was on trial for murder. *Id.* at 987. In its opening statement and closing argument, the prosecution asserted that defendant was a drug dealer and that the murder was gang-related. *Id.* at 991. The prosecution presented no evidence to support either of these assertions, however. *Id.* at 992-93. As the prosecutor's statements were unsupported by any evidence, the *Terry* court concluded "that the only purpose for the

- 10 -

State to argue that defendant was a drug dealer \*\*\* was to inflame the passion and prejudice of the jury in order to obtain a conviction." *Id.* at 993.

¶ 48　　Unlike *Terry*, where the State failed to present any evidence of drug dealing, the State in this case presented substantial evidence that defendant sold narcotics. Officer Daniels testified that defendant engaged in numerous hand-to-hand transactions in which defendant received money in exchange for items later discovered to be heroin. Officer Ternoir testified that he received two packets of heroin from defendant in exchange for $20. Whereas the prosecution in *Terry* lacked any evidentiary basis for its accusations, the prosecution in this case had evidence supporting its argument that defendant was a drug dealer. We thus conclude that the prosecutor's comments regarding defendant's involvement in the drug trade were not improper.

¶ 49　　　　　　　　　*2. Comments Regarding the Retirement of State Witnesses*

¶ 50　　Defendant also argues that the prosecutor improperly argued that Officers Titus and Ternoir "came out of retirement to specifically testify against" him. In its rebuttal closing argument, the prosecution noted that Ternoir was retired at the time of trial:

> "You heard Ternoir tell you, no doubt whatsoever one of the final words in his testimony, a final statement to the evidence in this case, no doubt whatsoever.
>
> He came in off the street, off his retirement, to point the finger at this guy right here, sitting in the middle of his three lawyers to tell you that that was the guy out slinging dope that morning."

The prosecution similarly made note of the fact that the forensic chemist who tested the recovered heroin was retired:

> "And ladies and gentlemen, if we even need to go into the physical evidence in this case, you know those drugs were sent to the Crime Lab. We know it's heroin. You heard the testimony of the retired chemist who came in off retirement to testify here before you about the dope."

Defendant contends that the prosecution improperly vouched for the credibility of Ternoir and Titus's testimony by referring to their retirement.

¶ 51　　"Generally, it is improper to vouch for the credibility of a witness or to express a personal opinion on a case." *People v. Emerson*, 122 Ill. 2d 411, 434 (1987). A prosecutor may comment on the strength of its evidence, however. *Id.* In order for a prosecutor's comments regarding a witness's credibility to be improper, "he must *explicitly* state that he is asserting his personal views." (Emphasis in original.) *People v. Pope*, 284 Ill. App. 3d 695, 707 (1996). In *People v. Rivera*, 235 Ill. App. 3d 536, 540-41 (1992), for example, the court held that it was improper for the prosecution to explicitly argue that retired police officers were less likely to lie because they would risk losing their pensions if they testified falsely.

¶ 52　　In the instant case, the prosecution did not directly argue that Titus's and Ternoir's retirement meant they were more credible. This court has "expressly reject[ed] the notion that a prosecutor improperly crosses the bounds of asserting his personal views regarding witnesses' credibility \*\*\* if the jury has to *infer* the prosecutor is doing so from his comments." (Emphasis in original.) *Pope*, 284 Ill. App. 3d at 707; see also *People v. Jackson*, 391 Ill. App. 3d 11, 43 (2009) ("Appellate courts are unwilling to infer that a prosecutor is injecting his personal opinion into an argument where the record does not unambiguously say so."). Unlike

*Rivera*, the prosecution did not specify that Titus and Ternoir were less likely to lie because they risked losing their retirement income. As the prosecution in this case did not explicitly vouch for Ternoir's or Titus's credibility and did not expressly argue that their retirement made them more credible, we cannot find that the prosecution's reference to the officers' retirement was improper.

¶ 53                   3. *Comments Regarding the Negative Effects of the Offense*

¶ 54    Defendant also challenges the prosecutor's references to the deleterious effects that defendant's drug dealing had upon society. Specifically, defendant claims that it was improper for the prosecution to argue that defendant sold "poison" and was "ruining that neighborhood for the people that live there."

¶ 55    While "a prosecutor may not characterize the defendant as an 'evil' person," he or she "may comment unfavorably on the evil effects of the crime and urge the jury to administer the law without fear." *People v. Nicholas*, 218 Ill. 2d 104, 121-22 (2005). Yet the prosecution must refrain from focusing its argument on "[t]he broader problems of crime in society" or engaging in "an extended and general denunciation of society's ills." *People v. Johnson*, 208 Ill. 2d 53, 77, 79 (2003).

¶ 56    In this case, the prosecutor's comments about defendant ruining the neighborhood properly focused upon the negative effects of defendant's conduct and not on crime in society at large. The State's evidence showed that defendant engaged in narcotics transactions with several individuals, including Officer Ternoir. The prosecutor's comments that defendant was putting heroin on the streets and ruining the neighborhood were thus based upon the evidence at trial. It was not improper for the prosecution in this case to comment upon the negative effects of defendant's conduct in its closing argument. See *People v. Melton*, 2013 IL App (1st) 060039, ¶¶ 23-24 (it was not improper for a prosecutor to argue that a defendant charged with distributing narcotics had been "feeding people's addictions" and "making people do 'crazy things' " where there was evidence that defendant engaged in several drug transactions); *People v. Janis*, 240 Ill. App. 3d 805, 815 (1992) (it was not improper for prosecution to refer to drugs as "poison"); *People v. Winters*, 25 Ill. App. 3d 1056, 1058 (1975) (it was not improper for prosecution to refer to heroin as "poison" at the defendant's sentencing hearing).

¶ 57    Defendant also challenges the following remark in the prosecution's rebuttal closing argument:

"You have the capability and you swore to follow the law.

And, ladies and gentlemen, that's all we're [*sic*] got here. Without it, it's just chaos. It's not just a little dope, it's the law. It's illegal. What [defendant] did was wrong, but *most importantly*, *it's what he's doing to us*." (Emphasis added.)

Defendant argues that this statement improperly created an "us-versus-them" mentality, aligning the jury with the prosecution and against defendant.

¶ 58    The prosecution may not "seek to engender an 'us-versus-them' mentality," as such an argument is "inconsistent with the inherent principles of the criminal trial process." *Johnson*, 208 Ill. 2d at 80; see also *People v. Marshall*, 2013 IL App (5th) 110430, ¶ 16 ("[T]he prosecutor cannot create an 'us versus them' argument during closing argument and effectively make himself a thirteenth member of the jury."). In *Johnson*, for example, the Illinois Supreme Court held that a prosecutor's argument that "[w]e as a society do not have to

live in their twisted world," and that "[w]e as a people can stand together," improperly "attempt[ed] to identify and merge [the prosecution's] position *** with the jury, the society, and the community." (Internal quotation marks omitted.) *Johnson*, 208 Ill. 2d at 79-80. Similarly, in *People v. Thomas*, 146 Ill. App. 3d 1087, 1089 (1986), the court held that it was improper for a prosecutor to argue, "There's nobody here for the People, just you." (Internal quotation marks omitted.)

¶ 59 In this case, the prosecution improperly created an "us-versus-them" mentality by telling the jury that the "most important[ ]" part of the case was what defendant "[is] doing to us." This comment suggested that defendant was causing harm to the jury, the prosecution, and to society in general. Like the comments in *Johnson* and *Thomas*, this comment improperly aligned the jury with the prosecution and against defendant. Having found that this comment was improper, we must address whether it prejudiced defendant.

¶ 60                                              4. *Prejudice*

¶ 61 Prosecutorial misconduct warrants a new trial if the improper remarks were a material factor in the conviction. *People v. Linscott*, 142 Ill. 2d 22, 28 (1991). In other words, we will find reversible error "only if *** the improper remarks were so prejudicial that real justice was denied or that the verdict resulted from the error." *People v. Runge*, 234 Ill. 2d 68, 142 (2009). Generally, where an improper comment is brief, isolated, and occurs in the context of proper arguments, it will not be deemed prejudicial. *E.g.*, *Runge*, 234 Ill. 2d at 142; *People v. Nicholas*, 218 Ill. 2d 104, 122-23 (2005); *People v. Daniel*, 2014 IL App (1st) 121171, ¶ 36.

¶ 62 In *People v. Wheeler*, 226 Ill. 2d 92, 130-31 (2007), the Illinois Supreme Court found that the prosecutor's employing an "us-versus-them" theme prejudiced defendant where he used that theme pervasively throughout his closing argument. The prosecutor began by characterizing himself as "the 'lone' and 'solitary figure' left to 'champion the deceased' while 'bearing the burden' of 'avenging another's death.' " *Id.* at 129. The prosecutor later "told the jurors that they lived 'sheltered lives' but a different dangerous world existed, 'full of dangerous people' and 'mean streets.' " *Id.* The prosecutor characterized the police witnesses in the case as "the 'thin blue line' to protect the jurors *** when 'someone is breaking into their house or assaulting them.' " *Id.* at 130. The court stressed that these comments, taken together, sought to "unit[e] the interests of the jurors in their own safety with that of the interests of the State in convicting defendant." *Id.* at 130-31. The court concluded that this pervasive theme in closing argument, coupled with the fact that the case "rel[ied] heavily on the credibility of the testifying police witnesses," could have contributed to the defendant's conviction. *Id.* at 131.

¶ 63 Unlike the pervasive "us-versus-them" theme in *Wheeler*, the prosecution's improper comment in this case consisted of only one statement in the context of a lengthy argument. The prosecutor in this case did not tell the jury that the police witnesses served to protect them from people like defendant or dwell upon any supposed threat posed by defendant. The prosecution also preceded and followed this improper comment with proper argument, reminding the jury of its duty to "follow the law" and urging the jury to "consider the evidence together, talk about it, *** and come back with a verdict that's just here." See *People v. Pasch*, 152 Ill. 2d 133, 208 (1992) (stating that it is "entirely proper" for the prosecution to "focus[ ] on the jury's duty to follow and enforce the law").

¶ 64 After arguments concluded, the court instructed the jury that closing arguments do not constitute evidence and that the evidence only consisted of the testimony of witnesses and the

- 13 -

exhibits. The court's instructions further alleviated the prejudicial effect of the prosecution's isolated comment. See *People v. Harris*, 225 Ill. 2d 1, 33 (2007) (considering the fact that "the jury was properly instructed that the arguments of counsel were not evidence" in finding that improper arguments were not prejudicial). In sum, the prosecutor's brief "us-versus-them" remark in this case, surrounded by proper argument and followed by a curative instruction, did not prejudice defendant. We thus conclude that the prosecution's arguments do not warrant reversal.

¶ 65                                        III. CONCLUSION

¶ 66            For the reasons stated above, we affirm defendant's conviction.

¶ 67            Affirmed.