2020 IL App (1st) 162792-U

No. 1-16-2792

Order filed February 6, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 6922 |
| | ) | |
| AVERY SINGLETON, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for retail theft, as the prosecution's comments in closing argument were proper except for one, which did not rise to the level of plain error. Pursuant to Supreme Court Rule 472, we remand to the trial court to allow defendant to raise his claims of error with respect to the assessment of fines and fees.

¶ 2    Following a jury trial, defendant was convicted of retail theft (720 ILCS 5/16-25(a)(1)

(West 2014)) and sentenced to an extended term of eight years' imprisonment. The court also

assessed $467 in various fines and fees. On appeal, defendant contends that he was denied his right

to a fair trial as a result of certain comments made by the prosecutor during closing argument that he claims were improper. Defendant separately contends that the trial court erred in imposing certain fines and fees. For the following reasons, we affirm defendant's conviction but remand to the circuit court to allow defendant to file a motion raising his claims of error regarding fines and fees.

¶ 3    Defendant was charged by information with a single count of retail theft for knowingly taking merchandise from a Home Depot store with a retail value in excess of $300, in violation of section 16-25(a)(1) of the Criminal Code of 2012. 720 ILCS 5/16-25(a)(1) (West 2014). Defendant elected to represent himself at his ensuing jury trial.

¶ 4    The State called Edmond Ramirez, who testified that he was a loss prevention specialist at the Home Depot home improvement store on 6211 North Lincoln Avenue in Chicago (the Lincoln Avenue Home Depot). Ramirez described the layout of the store and explained that the customer entrance was located at the south end of the store. At the time of the events in question, the only active cash registers were at the north end of the store. During Ramirez's testimony, the State admitted and published a diagram (People's Exhibit 3) of the layout of the Lincoln Avenue Home Depot. The diagram shows that the designated customer entrance is at a different end of the store from the location of the cash registers, which are stationed near the designated exit doors.

¶ 5    Ramirez testified that on April 9, 2015, he was in the store's security office, from which he viewed monitors from a number of video cameras at different locations in the store. Through those cameras, he observed defendant "pick up a welder from the hardware department" and place it in a shopping cart. Defendant also placed a garden hose into his cart. Ramirez then observed

defendant walk out of the entrance of the store and into the parking lot, without stopping at any cash register.

¶ 6     Ramirez left the security office and walked toward the front of the building so that he could continue to observe defendant. He observed defendant place the merchandise into the back of a green van before driving away. Ramirez noted the license plate number of the vehicle. Then, pursuant to company policy, he contacted nearby Home Depot stores to alert them in order to prevent a similar theft at another store.

¶ 7     Later on the same date, Ramirez went to a Home Depot store in Evanston (the Evanston Home Depot) where he observed that defendant was detained by other Home Depot loss prevention personnel. Evanston police arrived and placed defendant into custody. Ramirez testified that, with the Evanston police, he went to the parking lot of the Evanston Home Depot, where he identified the same green van he observed at the Lincoln Avenue Home Depot. Through the van's windows, Ramirez observed the merchandise that he had observed defendant take from the Lincoln Avenue store.

¶ 8     The following day, Ramirez went back to work at the Lincoln Avenue store. Outside his office, he observed a cart that contained merchandise. Ramirez identified a photograph of the cart of merchandise (People's Exhibit 6), which included a welder, a bucket of paint, a bucket of primer, and "yellow extension poles." Ramirez explained that the cart contained the same items he observed defendant steal the previous day, except for a hose that had been "returned at the Evanston store" and placed in that store's inventory. Ramirez testified that he brought the cart to a cashier to scan the items and "generate a receipt to determine the value of the merchandise that

was recovered." That receipt, which was admitted and published as People's Exhibit 1, indicated that the retail value of the merchandise on the cart was $1094.91.

¶ 9     Ramirez identified a digital video disc (DVD) with security video footage from the Lincoln Avenue Home Depot. The DVD was admitted into evidence and played before the jury. Ramirez also identified two still images from the video, which he testified showed defendant walking out of the store "two separate times with unpaid merchandise." Ramirez never observed defendant pay for any of the items.

¶ 10    On cross-examination, Ramirez agreed that the security video included "two separate sets of footage of the defendant exiting the store," with separate items of merchandise, indicating that defendant exited and reentered the store. The State rested after Ramirez's testimony.

¶ 11    Defendant called Evanston police officer Michael Mangas, who testified that he was working with officer Thomas Curtain on April 9, 2015.  Mangas and Curtain were dispatched for a "retail theft" at the Evanston Home Depot. Mangas acknowledged that his police report indicated that a Home Depot store employee detained defendant for damaging property. Mangas explained that defendant was arrested in Evanston for criminal damage to property, rather than theft, because defendant opened an item at the store but did not leave the store with the item.

¶ 12    Evanston police officer Thomas Curtain testified that he was training Mangas on April 9, 2015. Curtain acknowledged that a Home Depot gift card was taken from defendant and was "inventoried" on the day of his arrest. Curtain did not know if the gift card belonged to defendant, and he did not know the amount of the gift card's balance. Curtain denied that he kept the gift card recovered from defendant. Curtain acknowledged that police also inventoried a receipt from the purchase of the water hose returned to the Evanston Home Depot. He also acknowledged that

defendant's vehicle was towed after his arrest. He denied knowing whether evidence defendant attempted to retrieve from the vehicle was destroyed.

¶ 13    Alejandro Rojas, a loss prevention specialist for the Evanston Home Depot, testified that on April 9, 2015, he was contacted by Ramirez from the Lincoln Avenue Home Depot. Ramirez informed Rojas that defendant could be on the way to the Evanston Home Depot with stolen merchandise.

¶ 14    The final defense witness, Latasha James, testified that she was working at the return counter at the Evanston Home Depot on April 9, 2015, when defendant came to her with a water hose. Defendant had a receipt indicating that the hose was paid for in cash on March 28, 2015. James gave him cash for that return. On cross-examination, James acknowledged that the receipt indicated that the hose was purchased at a separate Home Depot on 87th Street in Chicago, and that the receipt did not identify the purchaser. After defendant returned the hose, it was placed with the regular inventory at the Evanston Home Depot.

¶ 15    In closing argument, the prosecutor commented:

> "There are people that are owners of Home Depot and they have to get paid and they have to pay employees, and if everybody were to just steal merchandise from them, then the prices would rise and that would be unfair for the merchants [*sic*] that just want to go in every single day and make a simple purchase."

¶ 16    The prosecutor argued that the evidence showed that defendant twice loaded a cart with merchandise and "exited through [the] entrance" of the Lincoln Avenue Home Depot, avoiding the cash registers near the designated customer exit at the other end of the store. The prosecutor recounted Ramirez's testimony that he identified the same stolen merchandise in defendant's

vehicle after defendant was detained at the Evanston Home Depot. The prosecutor then referred to the security video footage as the "strongest piece of evidence" in the case. After playing the video for the jury, the prosecutor argued that it showed that defendant left with merchandise through the entrance and there is "no reason a person would be putting all of the merchandise in a cart and leaving through the entrance." After showing the video, the prosecutor further argued:

"What you have that further corroborates that he was stealing is the location he decides to exit, through the entrance. He knows how to get out of that store without having paid for the merchandise. What you also have is that the items were recovered soon thereafter.

Going back just briefly about what is evidence and what isn't. What you have at the end of the day is a guy that the evidence—a guy who goes to Home Depot number one on March 28th on the South Side of Chicago, Home Depot number two on April 9, 2015, in Chicago, Home Depot number three in Evanston on the same date of April 9th. Three Home Depots.

What's he doing? We know he caused trouble at the second Home Depot opening their property. We know he stole from these two. There is evidence of some kind of gift card.

This guy has mastered retail theft. This is a con. This is what he is doing. He is very good at this. He is a professional thief, and you can see because professionals know how to exit with over a thousand dollars of merchandise without getting detected initially."

¶ 17    The prosecutor proceeded to argue that the State had proven each of the elements of the offense of retail theft, again referencing the video footage: "You saw for yourself moments ago how he just exited without paying for the merchandise."

¶ 18    In his closing argument, defendant claimed that he was not permitted to admit evidence, including a Home Depot gift card and receipts, that would have proved that he purchased the allegedly stolen merchandise. He argued that he could not "walk out of a store without paying for something without an alarm" being activated and maintained that he had purchased the items at issue.

¶ 19     During the State's rebuttal argument, the prosecutor stated: "This is a professional retail thief. It is a con scheme. Everything he is telling you goes along with the evidence which you have in this case.  It is a con scheme." The prosecutor again referred to Ramirez's testimony and the video footage as evidence that defendant left through the entrance of the Lincoln Avenue Home Depot store, in order to avoid paying for the merchandise.

¶ 20    The jury returned a guilty verdict. Defendant filed a *pro se* motion for a new trial. Defendant subsequently retained counsel and filed a supplemental motion for a new trial. The court denied those motions.

¶ 21    On July 12, 2016, after a hearing, the trial court imposed an extended-term sentence of eight years' imprisonment. The court also entered an order assessing $467 in various fines and fees. Defendant filed a motion to reduce sentence, which was denied on September 21, 2016. On that date, defendant filed a notice of appeal.

¶ 22    On appeal, defendant contends that the prosecutor's comments during closing and rebuttal argument constituted prosecutorial misconduct. He specifically takes issue with the prosecutor

labeling him a "professional thief" who "mastered retail theft" as well as the characterization of his actions as a "con." He also challenges the propriety of the comment that "if everybody were to just steal merchandise" from retail stores then "prices would rise and that would be unfair." He claims that these comments "introduced other crimes evidence relating prejudicial matters not introduced into evidence" and that such comments "inflame[d] the passions of the jury, denying [defendant] a fair trial." On that basis, he requests that we reverse and remand for a new trial.

¶ 23    In setting forth this argument, defendant acknowledges that he did not make a timely objection to the prosecutor's comments at trial, as necessary to preserve the alleged error. See *People v. Thompson*, 238 Ill. 2d 598, 611-12 (2010) ("To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion."). Nevertheless, he urges that we should address his argument under the doctrine of plain error, which "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *Thompson*, 238 Ill. 2d 598 at 613.

¶ 24    The plain-error doctrine applies when " '(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Thompson*, 238 Ill. 2d 598 at 613 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). "The first step of plain-error review is determining whether any error occurred." *Thompson*, 238 Ill. 2d at 613; see also *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005) ("Before we may apply either prong of the plain error

doctrine *** there must be a plain error."). Thus, we first consider whether the prosecutorial comments at issue constituted error.

¶ 25    A prosecutor has "wide latitude in making a closing argument" and may comment on the evidence presented at trial and "any fair, reasonable inferences it yields [citation], even if such inferences reflect negatively on the defendant [citation]." *Nicholas*, 218 Ill. 2d at 121. However, "comments intended only to arouse the prejudice and passion of the jury are improper [citation]." *People v. Jones*, 2016 IL App (1st) 141008, ¶ 21. "A prosecutor cannot use closing argument simply to inflame the passions or develop the prejudices of the jury without throwing any light upon the issues." (Internal quotation marks omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 128-29 (2007).

¶ 26    We initially note that, whereas defendant posits that the "recent trend" is to review comments in closing arguments *de novo*, the State suggests that a deferential "abuse of discretion" standard is appropriate. Our court has acknowledged some confusion regarding the applicable standard of review, in light of "seemingly contradictory statements" from supreme court precedent. *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 47.  In 2000, our supreme court stated that: "[t]he regulation of substance and style of the closing argument is within the trial court's discretion, and the trial court's determination of the propriety of the remarks will not be disturbed absent a clear abuse of discretion." *People v. Blue*, 189 Ill. 2d 99, 128 (2000). However, in 2007, our supreme court stated that "[w]hether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*." *Wheeler*, 226 Ill. 2d at 121. In *Phagan*, this court determined that *Blue*'s abuse of discretion standard was better supported by precedent than the *de novo* standard described in *Wheeler*. *Phagan*, 2019 IL App (1st) 153031,

¶ 54 ("We follow *Blue* and review claims of prosecutorial misconduct in closing arguments under the abuse of discretion standard."). Elsewhere, in *People v. Cook*, 2018 IL App (1st) 142134, ¶ 63, this court found that "no such conflict exists" but that "supreme court decisions have applied the two standards of review separately to the appropriate issue addressed on appeal." Our court in *Cook* reasoned: "Whereas a reviewing court applies an abuse of discretion analysis to determinations about the propriety of a prosecutor's remarks during argument [citations] a court reviews *de novo* the legal issue of whether a prosecutor's misconduct, like improper remarks during argument, was so egregious that it warrants a new trial." *Cook*, 2018 IL App (1st) 142134, ¶ 64.

¶ 27     In this case, we need not decide whether *Wheeler* or *Blue* defined the precise standard of review. This is because, whether we review the challenged arguments *de novo* or under an abuse of discretion standard, our conclusion is the same.

¶ 28     Defendant's arguments can be summarized as challenges to (1) the prosecutor's comments labeling him a "professional thief" who had "mastered retail theft"; (2) the prosecutor's characterization of defendant's actions as a "con" or "con scheme"; and (3) the comment that "if everybody were to just steal merchandise from [retail stores] then the prices would rise" to the detriment of consumers. We review these in turn.

¶ 29     First, with respect to the "professional thief" and "mastered retail theft" remarks, defendant suggests that these comments "spread before the jury other crimes evidence that had not been introduced at trial." He suggests that they were improper since "there was no evidence presented to the jury from which they could conclude that [defendant] made his living as a thief."

¶ 30    After reviewing the record, we find these comments were not improper because they fell within the wide latitude afforded to prosecutors to comment about the trial evidence and the reasonable inferences therefrom. See *People v. Perry*, 224 Ill. 2d 312, 347 (2007) ("The prosecutor may comment during closing argument on the evidence and on any fair and reasonable inference the evidence may yield, even if the suggested inference reflects negatively on the defendant." (citing *Nicholas*, 218 Ill. 2d at 121)).  Here, as argued by the State's brief, "the evidence tended to establish not simply that defendant committed an isolated act of retail theft but that he put some planning and skill" into the crime. The State presented evidence that defendant (twice) brought merchandise out of the Lincoln Avenue Home Depot by exiting through the main entrance, where there were no active cash registers, rather than using the exit near the cash registers. It was reasonable to infer that he did this deliberately. We agree with the State that "in context, the prosecutor's use of the word 'professional' reflected defendant's care in planning the offense by utilizing his knowledge of the layout of the store" to remove merchandise surreptitiously.

¶ 31    The "professional thief" comment must also be viewed in light of the evidence that defendant, after leaving the Lincoln Avenue Home Depot, proceeded directly to the Evanston Home Depot store, where he was detained for opening merchandise. That evidence permitted a reasonable inference that defendant intended to take merchandise from the Evanston store without paying for it. We thus find that the references to defendant as a "professional" or "master" thief fell within the wide latitude afforded prosecutors to comment on the evidence presented and the reasonable inferences therefrom.

¶ 32    We likewise reject defendant's argument to the extent it is premised on the prosecutor's characterization of his actions as a "con" or "con scheme." In context, we believe these comments

were also reasonable inferences drawn from the evidence that defendant (1) deliberately took several items of merchandise from the Lincoln Avenue store without paying and (2) proceeded directly to the Evanston Home Depot, where he was observed opening the packaging to additional merchandise. From this evidence, it was reasonable to infer that defendant intended to deceive or "con" the Home Depot by attempting to perpetrate retail theft.

¶ 33    Unlike the foregoing prosecutorial remarks, we do find error (though not reversible or plain error) with respect to the final challenged comment, in which the prosecutor argued that "if everybody were to just steal merchandise from [retail stores] then the prices would rise and that would be unfair." This comment was improper because it was not relevant to the specific evidence of this case. See *Nicholas*, 218 Ill. 2d at 121-22 (a prosecutor "may comment unfavorably on the evil effects of the crime and urge the jury to administer the law without fear, *when such argument is based upon competent and pertinent evidence*" (emphasis added)) Rather, the prosecutor's remark amounted to an improper general comment on the effects of crime. See *People v. Deramus*, 2014 IL App (1st) 130995, ¶ 55 ("the prosecution must refrain from focusing its argument on '[t]he broader problems of crime in society' or engaging in 'an extended and general denunciation of society's ills.' " (quoting *People v. Johnson*, 208 Ill. 2d 53, 77, 79 (2003))). We note that the State cites *Deramus* as support for the propriety of the prosecutor's remark regarding the effects of retail theft. However, *Deramus* is distinguishable: in that case we explained that "the prosecutor's comments about defendant ruining the neighborhood properly focused upon *the negative effects of defendant's conduct and not on crime in society at large*." (Emphasis added.) *Deramus*, 2014 IL App (1st) 130995, ¶ 56. Unlike the situation in *Deramus*, the prosecutor's comment in this case

was not limited to *defendant's* retail theft, but referred to the overall effect of theft on consumers at large knowing that the members of the jury are consumers.

¶ 34    Nevertheless, although improper, the prosecutor's comment did not result in *reversible error*, as we cannot say that it resulted in substantial prejudice to the defendant because the evidence was overwhelming. See *People v. Harris*, 2017 IL App (1st) 140777, ¶ 60 ("[A] 'substantial prejudice' inquiry applies to determine if there is reversible error."). As explained by our supreme court:

> "In reviewing comments made at closing arguments, this court asks whether or not the comments engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them. [Citation.] Misconduct in closing argument is substantial and warrants reversal and a new trial if the improper remarks constituted a material factor in a defendant's conviction. [Citation.] If the jury could have reached a contrary verdict had the improper remarks not been made, or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted. [Citation.]" *Wheeler*, 226 Ill. 2d at 123.

"In other words, '[w]hile a prosecutor may not make arguments or assumptions that have no basis in evidence, even improper comments or remarks are not reversible error unless they are a material factor in the conviction or cause substantial prejudice to the accused. [Citation.]' " *People v. Harris*, 2017 IL App (1st) 140777, ¶ 61 (quoting *People v. Smith*, 362 Ill. App. 3d 1062, 1085 (2005)).

¶ 35    In this case, we cannot say that the prosecutor's comment, which simply observed that retail theft causes prices to rise, could result in substantial prejudice or constitute a material factor in the conviction. We keep in mind that "[c]losing arguments must be viewed in their entirety and the challenged remarks must be viewed in context." *Wheeler*, 226 Ill. 2d at 123. After reviewing the totality of the closing argument, we fail to see how this general comment could have had any impact on the jury's verdict. The State's argument primarily focused on the testimonial evidence of Ramirez, as well as the video evidence. The jury apparently credited that evidence to find that defendant committed retail theft. We do not see any realistic possibility that the jury would have acquitted defendant, but for the comment at issue.  See *People v. Ramos*, 396 Ill. App. 3d 869, 874 (2009) ("Reversible error may be found in a closing argument where the defendant can establish that but for the particular comment, the verdict would have been different."). In other words, we cannot conclude that this comment constituted a material factor or caused substantial prejudice because all of the evidence was overwhelming that defendant took the merchandise from Home Depot without paying for it or intending to pay for it. Thus, that comment does not warrant reversal.

¶ 36    Furthermore, defendant cannot establish plain error under either prong of the plain-error test. First, the evidence in this case was not closely balanced. Defendant was observed on video taking several items from the Home Depot store in Chicago and leaving the store while avoiding the cash registers and not paying for them. The items were recovered in Evanston and found to have a value of over $1000, far exceeding the monetary amount charged in the statute. Also, we cannot find that the error was so serious that it affected the fairness of the trial or challenged the integrity of the judicial process. We specifically reject defendant's contention that we should find plain error because the prosecution engaged in a "pattern" of misconduct that affected his

substantial rights. See *People v. Johnson*, 208 Ill. 2d 53, 64 (2003) ("[A] pattern of intentional prosecutorial misconduct may so seriously undermine the integrity of judicial proceedings as to support reversal under the plain-error doctrine."). We find only a single improper comment, not a "pattern" of misconduct.

¶ 37     We also reject defendant's suggestion that the "closely balanced" prong of the plain-error doctrine applies; that is, we cannot say that the "evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). In contending that the evidence was closely balanced, defendant claims that Ramirez's credibility was "suspect" because: (1) Ramirez did not personally scan the items used to generate the receipt (People's Exhibit 1) showing the value of the stolen goods; (2) that receipt reflected two five-gallon buckets of interior paint; whereas the photograph of the cart (People's Exhibit 6) showed a five-gallon bucket of exterior paint and a five-gallon bucket of primer; and (3) the date printed on the receipt was April 9, 2015, although Ramirez indicated that the items were not scanned until the following day. Defendant further suggests that the video footage showing defendant leaving the store was insufficient to prove that he had not paid for the merchandise. Despite any inconsistencies identified by defendant, under the totality of the evidence we cannot say that the evidence was close.  See *People v. Sebby*, 2017 IL 119445, ¶ 53 ("In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case. [Citations]."). Ramirez provided unrebutted testimony that he observed defendant leave through the entrance of the store—twice—without paying for merchandise. That testimony was

corroborated by video footage of defendant. We see no realistic possibility that the jury would have acquitted him of retail theft, even without the prosecutor's improper comment.

¶ 38    In sum, we find that: (1) the comments referring to defendant as a "professional thief" who had "mastered retail theft" and referring to his actions as a "con" were permissible; and (2) although the prosecutor improperly commented on the effect of theft on consumer prices, that comment did not constitute reversible error or rise to the level of plain error. Accordingly, we affirm defendant's conviction.

¶ 39    Separately, defendant raises a number of claims regarding the trial court's assessment of fines and fees. Specifically, he asserts that a number of charges labeled as "fees" are, in fact, "fines" that are offset by the $5-per-day credit for his time in presentence custody, pursuant to section 110-14(a) of the Code of Criminal Procedure of 1963. 725 ILCS 5/110-14(a) (West 2018) ("Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of the offense shall be allowed a credit of $5 for each day so incarcerated."). In addition, he asserts that the trial court erred in assessing a $5 electronic citation fee, pursuant to section 27.3e of the Clerks of Courts Act (705 ILCS 105/27.3e (West 2018)), because that fee applies only to misdemeanors, whereas he was convicted of a felony.

¶ 40    On February 26, 2019, while this appeal was pending, our supreme court adopted new Illinois Supreme Court Rule 472, which sets forth the procedure in criminal cases for correcting sentencing errors in, as relevant here, the "imposition or calculation of fines, fees, and assessments or costs" as well as the "application of *per diem* credit against fines" and "calculation of presentence custody credit." Ill. S. Ct. R. 472(a)(1), (2), (3) (eff. Mar. 1, 2019). On May 17, 2019, Rule 472 was amended to provide that "[i]n all criminal cases pending on appeal as of March 1,

2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019). "No appeal may be taken" on the ground of any of the sentencing errors enumerated in the rule unless that alleged error "has first been raised in the circuit court." Ill. S. Ct. R. 472(c) (eff. May 17, 2019). Therefore, pursuant to Rule 472, we "remand to the circuit court to allow [defendant] to file a motion pursuant to this rule," raising the alleged errors regarding the imposition of fines and fees, and application of presentence custody credit. Ill. S. Ct. R. 472(e) (eff. May 17, 2019).

¶ 41    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County with respect to defendant's conviction but remand to the circuit court to allow defendant to file a motion raising his contentions regarding fines and fees.

¶ 42    Affirmed and remanded.