2020 IL App (1st) 171817-U

No. 1-17-1817

Order filed May 14, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 15881 |
| | ) | |
| TYRONE TUCKER, | ) | Honorable |
| | ) | Thomas V. Gainer Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for armed habitual criminal is affirmed where the State presented sufficient evidence, the record is insufficient to review his ineffective assistance of counsel claim, and the State did not make improper comments in closing argument.

¶ 2    Following a jury trial, defendant Tyrone Tucker was convicted of armed habitual criminal (AHC) and sentenced to seven years' imprisonment. On appeal, defendant argues (1) the State failed to prove him guilty beyond a reasonable doubt, (2) counsel was ineffective for

stipulating to the fact that defendant had the prior qualifying convictions for AHC, and (3) he was denied a fair trial where the State made improper comments in closing and rebuttal arguments. For the following reasons, we affirm.

¶ 3    Defendant was charged by indictment with one count of AHC, four counts of aggravated unlawful use of a weapon, and two counts of unlawful use or possession of a weapon by a felon. The State dismissed all charges except the AHC count (720 ILCS 5/24-1.7(a) (West 2014)), which alleged defendant had prior qualifying felony convictions for manufacture or delivery of a controlled substance under case number 97 CR 8329 and armed violence under case number 90 CR 28955.

¶ 4    Chicago police officer Keith Kalafut testified that around 9 p.m. on September 14, 2015, he was on patrol in an unmarked vehicle with his partner and received a call regarding a "man with a gun," directing them to 15th Street between Kedzie Avenue and Sawyer Avenue. As he drove there, Kalafut noticed defendant, whom he identified in court, walking by an alley on 15th. Defendant was the only individual Kalafut observed at that location. The officers parked approximately 15 feet from defendant and exited their vehicle. Kalafut was "right underneath" a luminated streetlamp. The officers announced their office and defendant walked away through a "grassy empty lot." When the officers were approximately 10 feet from defendant, he removed a firearm from his waistband, dropped it onto the ground, and continued walking. Kalafut had a view of defendant's "right profile with the back," and saw his right side at a "45-degree angle." Kalafut described the lighting in the area as "pretty good." After dropping the firearm, defendant walked two or three steps. Kalafut then proceeded to detain defendant and his partner recovered

the firearm, a .357-caliber handgun loaded with five rounds, which Kalafut inventoried and identified in court.

¶ 5 Kalafut identified People's Exhibit 5 as a photograph of the vacant lot. Although the photograph was taken during the day, he stated that it truly and accurately depicted the way the lot looked on the evening of September 14, 2015. Kalafut identified People's Exhibit 6 as the firearm defendant dropped.

¶ 6 On cross-examination, Kalafut testified that it was dark when he responded to the call. The vacant lot was the size of three or four city parcels and did not contain artificial lighting. Kalafut agreed that Defense Exhibit 5, a photograph of the lot, accurately depicted the area. Defendant did not run, resist, or struggle. Kalafut confirmed that officers refer to that neighborhood as a "high-crime area," people often leave firearms in the area, and he had recovered many firearms there before. Kalafut was not wearing a body camera, his vehicle did not have a dashcam, and although he could have requested video footage from a police department camera and private cameras that faced the vacant lot, he did not. He also did not call an evidence technician to the scene, request testing on the firearm, or contact the person who made the 911 call.

¶ 7 On redirect examination, Kalafut testified that he did not call an evidence technician because "there's just so many *** regular guns recovered in the city" and evidence technicians are only assigned to crimes against persons. He did not request DNA testing because he observed defendant drop the firearm. No one else was in the vacant lot at that time, there was no debris, and the firearm was not obscured by grass. Kalafut stated that Defense Exhibit 5 depicted the

grass "a lot taller" than another photograph of the lot, People's Exhibit 4.[1] On recross examination, Kalafut testified that the grass in the lot was not that long at the time of the incident.

¶ 8    Evidence technician Matthew Savage testified that he tested the firearm and was unable to recover fingerprints. The firearm was rusted, with "pitting," "corrosion scratches," and a wooden grip that was "heavily textured" with "seams all over," which reduced the likelihood of recovering fingerprints. Savage explained that where a fingerprint develops on a surface, any "rubbing" with another surface—such as removing the item from a waistband or dropping it to the ground—is "very likely to destroy it."

¶ 9    On cross-examination, Savage testified that exposure to water, rain, and dew can affect fingerprint recovery, and that rust and pitting can be caused by exposure to those elements. He did not attempt to collect DNA from the firearm. On redirect examination, Savage testified that the firearm could not have been tested for DNA because DNA testing is limited to crimes against persons.

¶ 10    The State entered a stipulation that defendant was convicted of "two prior qualifying felonies" for purposes of the AHC statute.

¶ 11    Defendant testified that on September 14, 2015, he was walking on the sidewalk near a vacant lot by 15th and Christiana Avenue when a black vehicle "zoomed past," "came to a skid," and reversed. Defendant was "spooked," and turned around before the passenger of the vehicle exited and detained him. Defendant watched as the men from the vehicle, whom he then realized were officers, entered the vacant lot with flashlights.

---

[1] The prosecutor asked Kalafut to describe the length of the grass on September 14, 2015. Kalafut stated the grass was "more like this picture," but the transcript does not specify which exhibit he referenced.

¶ 12    Defendant could not see what the officers were doing because a tree and "tall weeds" blocked his view. He stated that the weeds depicted in People's Exhibit 4 were shorter than the weeds on the night of the incident. Although the weeds in another photograph, Defense Exhibit 9, were taller than in People's Exhibit 4, the weeds that night were taller still. After three or four minutes, the officers returned and drove defendant to the police station, where one of them pulled out a firearm that defendant had never seen before. Defendant denied walking into the vacant lot or carrying a firearm that evening.

¶ 13    On cross-examination, defendant testified that "a lot" of people were in the area that night and some were in front of the vacant lot. The weeds in the lot were 2½ to 3 feet tall.

¶ 14    Prior to closing arguments, the trial court instructed the jury that "[w]hat the lawyers say during the arguments is not evidence and should not be considered by you as evidence." During argument, the State said, "Illinois recognizes that two-time convicted felons and guns do not mix. It's a bad combination. That's why this law is in place. This is a seriously deadly weapon." Defense counsel objected, and the court sustained the objection. The State continued, "it's unfortunate but we live in the city of Chicago and guns run rampant and guns rule the streets but in this courtroom guns do not rule. You do."

¶ 15    Defense counsel argued that the officers "wanted" to find a man with a firearm and as a result, failed to conduct a "sufficient investigation" before arresting defendant. Defense counsel cited the officers' failure to recover footage of the incident, call an evidence technician, or obtain DNA testing on the firearm.

¶ 16    In rebuttal, the State argued that it would be "outlandish" to accept that officers would arrest defendant without reason. The following colloquy occurred:

"[ASSISTANT STATE'S ATTORNEY (ASA)]: Ladies and Gentlemen, in a city where toddlers are being shot in the head—

[DEFENSE COUNSEL]: Objection.

THE COURT: Sustained. Disregard that. Do not go down there.

[ASA]: Ladies and Gentlemen, you read the news. In situations in a city this busy when officers see me put the gun to the ground, do they need to call an evidence technician? Do they need to go and try to find video that may or may not exist?

* * *

The officers saw him with the gun. He saw him put the gun down. This wasn't some haphazard police investigation. This was good police work. They got the convicted felon with the gun. No, no fingerprints. No DNA. No [evidence technician]. But [is] anybody sitting here doubting whether or not they just saw me put that gun on the ground?"

Following these arguments, the court further instructed the jury that "[n]either opening statements nor closing arguments are evidence and any statement or argument made by the attorneys which is not based on the evidence should be disregarded."

¶ 17    The jury was instructed that in order to sustain the charge of AHC, the State must prove that the defendant "knowingly possessed a firearm" and "has been convicted of two prior qualifying felonies."

¶ 18    The jury found defendant guilty of AHC. Defense counsel filed a motion for a new trial, which he amended. Relevant here, counsel argued that the State failed to prove him guilty and made improper remarks in closing argument and rebuttal regarding recent unrelated violence in

the city. Counsel attached several newspaper articles from the week of the trial, which discussed the shooting deaths of three children in Chicago.

¶ 19    At a hearing on the amended motion, the State argued that its comments were "invited" by defense counsel's argument that the officers conducted an insufficient investigation, and were meant to clarify that the investigation was appropriate for this "purely possessory offense." The trial court denied defendant's motion, noting that the evidence supported the verdict and that the prosecutor's "remark about the situation in the city this busy was not a repeat of her talking about toddlers *** being shot in the head" because "she was trying to negate the impact of [defense counsel's] argument *** that the police investigation was shotty [*sic*]."

¶ 20    Following a hearing, the trial court sentenced defendant to seven years' imprisonment. Defendant filed a motion to reconsider sentence, which the court denied.

¶ 21    On appeal, defendant first asserts that the State failed to prove beyond a reasonable doubt that he possessed the firearm because the condition of the firearm and Kalafut's testimony that it was in an area where people sometimes leave firearms suggests it was a "community gun." Defendant also argues that the only direct evidence connecting him to the firearm was Kalafut's testimony that defendant removed it from his waistband and dropped it to the ground, which was "improbable" and contradicted by evidence that Kalafut's view was obstructed because it was dark and the lot had tall weeds.

¶ 22    In a challenge to the sufficiency of the evidence, the question on review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *People v. Harris*, 2018 IL 121932, ¶ 26. We do not retry the defendant or substitute our own judgment for the trier of fact's

on the weight of testimony, the resolution of conflicts in the evidence, or which inferences to draw from the evidence. *Id.* Instead, we draw all reasonable inferences in the State's favor, and will reverse a conviction only if the evidence is "so improbable or unsatisfactory" that there remains a reasonable doubt as to the defendant's guilt. *Id.*

¶ 23    Defendant was convicted of AHC. In relevant part, the AHC statute provides:

"(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:

(1) a forcible felony as defined in Section 2-8 of this Code;

(2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child ***; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm ***; or

(3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a) (West 2014).

¶ 24    Here, the evidence viewed in a light most favorable to the State establishes that defendant committed the offense. The parties stipulated that defendant was convicted of two prior qualifying felonies for purposes of the AHC statute. As for the element of possession, Kalafut testified that from approximately 10 feet, under "pretty good" lighting from a streetlamp, he saw defendant remove a firearm from his waistband and drop it to the ground. After detaining defendant, Kalafut's partner recovered a firearm from that location. Thus, there is sufficient

evidence that defendant possessed a firearm in violation of the AHC statute. Because the State presented sufficient evidence of defendant's prior qualifying convictions and of his possession of a firearm, a rational trier of fact could find all the elements of the crime proven beyond a reasonable doubt. See *id.*

¶ 25    Still, defendant asserts that the firearm could have been a "community gun," and that Kalafut's testimony that he observed defendant with the firearm was not credible because of the lighting conditions and height of the grass in the vacant lot. We reiterate that it is the trier of fact's responsibility to weigh witness testimony, resolve conflicts in the evidence, and draw inferences from the evidence. See *Harris*, 2018 IL 121932, ¶ 26. Further, the testimony of a single witness, if positive and credible, is sufficient to convict. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). The jury heard both Kalafut and defendant testify regarding defendant's arrest, and was not required to accept defendant's version of events over Kalafut's. See *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001) ("a fact finder need not accept the defendant's version of events as among competing versions"). Viewed in a light most favorable to the State, the jury could rationally find defendant guilty of AHC. Accordingly, his challenge to the sufficiency of the evidence fails. See *Harris*, 2018 IL 121932, ¶ 26.

¶ 26    Second, defendant argues trial counsel was ineffective for stipulating that defendant had two prior qualifying felony convictions for AHC. Defendant posits that his armed violence conviction could only qualify if it constituted a forcible felony, and that counsel should have relied on *People v. Carmichael*, 343 Ill. App. 3d 855 (2003), to argue that it did not.

¶ 27    Both the United States and Illinois constitutions guarantee criminal defendants the right to effective assistance of counsel. U.S. Const., amends VI, XIV; Ill. Const. 1970, art. 1, § 8;

*Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To prevail on an ineffective assistance claim, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) so prejudiced the defendant as to deny him a fair trial. *Strickland*, 466 U.S. at 687. To establish the deficient performance prong, a defendant must overcome the presumption that counsel's conduct was the result of trial strategy. *People v. Perry*, 224 Ill. 2d 312, 341-42 (2007). To show prejudice, a defendant must show that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v. Patterson*, 192 Ill. 2d 93, 107 (2000). Failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *Id.*

¶ 28    Ineffective assistance claims should be raised on direct appeal unless "the record is incomplete or inadequate for resolving the claim." *People v. Veach*, 2017 IL 120649, ¶ 46. This is because defendants risk forfeiture of their claim if it is apparent on the record and they fail to raise it on direct review. *Id.* Our supreme court has made clear, however, that where the record is incomplete or inadequate such that review of the issue depends on facts not found in the record, ineffective assistance claims are better suited for collateral review. *Id.* ¶ 47.

¶ 29    After reviewing the record, we conclude that it does not contain enough information to allow review of defendant's ineffective assistance of counsel claim on direct appeal. As noted, a conviction for AHC requires that the offender have two or more qualifying convictions. 720 ILCS 5/24-1.7(a) (West 2014). These include forcible felonies, defined by statute as

> "treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping,

aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2-8 (West 2014).

¶ 30 In *Carmichael*, the defendant was found guilty of unlawful use of a weapon by a felon, which is a Class 2 felony when an offender has been convicted of a forcible felony. *Carmichael*, 343 Ill. App. 3d at 858. The State informed the trial court that the defendant had a prior conviction for armed violence, but "did not, either at trial or the sentencing hearing, introduce any evidence regarding the circumstances surrounding that prior conviction." *Id.* The trial court imposed a sentence for a Class 2 felony. *Id.* On appeal, the defendant argued that the State had not shown that his prior conviction for armed violence, which the parties agreed was predicated on his commission of possession of a controlled substance, was a forcible felony. *Id.* at 860. We agreed with the defendant and found that armed violence was not inherently a forcible felony. *Id.* at 861. We further stated that "whether the defendant's armed violence conviction constitutes a forcible felony" depends on "whether the circumstances surrounding the commission of that particular offense support the conclusion that the defendant contemplated that the use or threat of force or violence might be necessary to carry out the offense." *Id*. Because the record was "silent as to the circumstances surrounding the defendant's armed violence conviction," we held that the trial court erred in its implicit finding that the defendant's armed violence conviction was a forcible felony. *Id.*

¶ 31 In contrast to *Carmichael*, where the dearth of information relating to a predicate conviction rendered the evidence insufficient, the parties in this case stipulated that defendant had "two prior qualifying felonies" for purposes of the AHC statute. The indictment lists the two

prior qualifying felonies as delivery of a controlled substance and armed violence. As the record does not indicate the underlying conduct for defendant's armed violence conviction, it does not establish that, contrary to the stipulation, the armed violence conviction was not a forcible felony under the AHC statute.

¶ 32    Defendant asks us to take judicial notice of his certified statement of conviction for armed violence, attached as an appendix to his initial brief, which according to defendant, purports to show that a drug possession offense "was the predicate felony for the armed violence conviction." To the extent defendant contends this is evidence probative of the issue on appeal, however, we decline to take judicial notice because it was not before the trial court. See *People v. Boykin*, 2013 IL App (1st) 112696, ¶ 9 (a reviewing court cannot "take judicial notice of critical evidentiary material that was not presented to and not considered by the fact finder during its deliberations"); *People v. Joya*, 319 Ill. App. 3d 370, 381 (2001) ("a defendant cannot base an appeal upon evidence which was never presented to the trial court in the context of his case"). Consequently, based on the record properly before us, we cannot determine whether counsel was ineffective for failing to argue that defendant's prior conviction for armed violence did not qualify for purposes of AHC. Defendant's ineffective assistance claim is better suited to postconviction proceedings, and we will not disturb the judgment of the trial court on this basis.

¶ 33    Finally, defendant argues he was denied a fair trial because the State made improper comments in closing and rebuttal arguments. Specifically, defendant contends that he was prejudiced by the State's comments during closing that defendant had a "seriously deadly weapon" and that "guns run rampant and guns rule the streets" in Chicago along with the comment during rebuttal that toddlers get "shot in the head" in Chicago. According to defendant,

these comments encouraged the jury to adopt an "us versus them" mentality and shifted its focus from the evidence at trial to recent, unrelated incidents of gun violence involving children.

¶ 34    Initially, we note that the parties disagree as to the standard of review for this issue. In *People v. Blue*, 189 Ill. 2d 99, 128 (2000), the supreme court stated that "[t]he regulation of substance and style of the closing argument is within the trial court's discretion, and the trial court's determination of the propriety of the remarks will not be disturbed absent a clear abuse of discretion." (Internal quotation marks omitted.) Later, in *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007), the supreme court stated that "[w]hether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*." In *People v. Cook*, 2018 IL App (1st) 142134, ¶¶ 63-64, this court found that *Blue* and *Wheeler* were not in conflict, but rather applied each standard "to the appropriate issue addressed on appeal," *i.e.*, "an abuse of discretion analysis to determinations about the propriety of a prosecutor's remarks during argument," and a *de novo* analysis to "the legal issue of whether a prosecutor's misconduct, like improper remarks during argument, was so egregious that it warrants a new trial." But see *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 54 (following *Blue*).

¶ 35    Here, we need not decide the standard of review because whether we review the challenged arguments under an abuse of discretion standard or *de novo*, our conclusion is the same.

¶ 36    Generally, prosecutors are afforded wide latitude in closing argument. *Wheeler*, 226 Ill. 2d at 123. As such, a prosecutor "may comment on the evidence and any fair reasonable inferences it yields." *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005). A prosecutor may not,

however, argue assumptions or facts not based on evidence. *People v. Terry*, 312 Ill. App. 3d 984, 993 (2000). "In reviewing comments made at closing arguments, this court asks whether or not the comments engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them." *Wheeler*, 226 Ill. 2d at 123. Substantial prejudice occurs "if the improper remarks constituted a material factor in a defendant's conviction." *Id.* On review, we consider the entire closing arguments of both the prosecutor and defense attorney in order to place the remarks in context. *People v. Phillips*, 392 Ill. App. 3d 243, 275 (2009). "Statements will not be held improper if they were provoked or invited by the defense counsel's argument." *People v. Glasper*, 234 Ill. 2d 173, 204 (2009).

¶ 37     The prosecutor first argued in closing that "Illinois recognizes that two-time convicted felons and guns do not mix. It's a bad combination. That's why this law is in place. This is a seriously deadly weapon." The trial court sustained defendant's objection and admonished the jury to disregard arguments not based in evidence, thereby resolving this issue. See *People v. Moore*, 171 Ill. 2d 74, 105-06 (1996) ("[t]he act of sustaining an objection and properly admonishing the jury is usually viewed as sufficient to cure any prejudice"); *People v. Petty*, 2017 IL App (1st) 150641, ¶ 36 ("where a jury is properly instructed regarding the role of arguments and informed that arguments are not evidence and not to be considered as evidence, we presume the jury will follow the admonition").

¶ 38     Viewing the State's remaining comments in context, we cannot say they were improper. Contrary to defendant's position, we do not find the State fostered an "us versus them" mentality in stating that "it's unfortunate but we live in the city of Chicago and guns run rampant and guns rule the streets but in this courtroom guns do not rule. You do." This statement did not encourage

the jury "to decide the case from an expression of misdirected emotion or outrage" and abandon "its responsibility to determine defendant's guilt or innocence based on the evidence and the law with the application of reason and deliberation." *People v. Davis*, 2018 IL App (1st) 152413, ¶ 76. Rather, the State permissibly emphasized the seriousness of the crime and the importance of the administration of justice. See *People v. Desantiago*, 365 Ill. App. 3d 855, 864 (2006) ("A prosecutor does not engage in misconduct *** simply because the prosecutor dwells upon the evil results of crime and urges the fearless administration of justice.").

¶ 39 Defense counsel then argued that the officers conducted an insufficient investigation by failing to retrieve footage of the incident, call an evidence technician, or obtain DNA testing on the firearm. The prosecutor's comments in rebuttal regarding the amount of crime in the city responded to defense counsel's claims that the officers performed a poor investigation, as the prosecutor explained why the officers did not do more to investigate when there was no crime against a person. See *People v. Nieves*, 193 Ill. 2d 513, 533-34 (2000) (rejecting the defendant's challenge to comments the prosecutor made in rebuttal because they were an "invited" response to the defendant's closing argument). To the extent defendant claims the prosecutor's comment regarding toddlers "being shot in the head" shifted the jury's focus from the case at hand to the broader problem of gun violence, we note that the court sustained defendant's objection and immediately reprimanded the prosecutor, which cured any resulting prejudice. See *Moore*, 171 Ill. 2d at 105-06. Therefore, viewing the record as a whole, the prosecutor did not commit misconduct.

¶ 40 In sum, we find that (1) the State presented sufficient evidence to sustain defendant's conviction for AHC, (2) the record is insufficient to review defendant's ineffective assistance

claim, and (3) the State did not make improper comments in closing and rebuttal. Accordingly,

we affirm the judgment of the circuit court.

¶ 41    Affirmed.