2021 IL App (1st) 182042-U

FIRST DISTRICT,
FIRST DIVISION
November 22, 2021

No. 1-18-2042

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | No. 17 CR 16867 |
| ISAAC SHARP, | ) ) | Honorable |
| Defendant-Appellant. | ) ) ) | Timothy Joseph Joyce, Judge Presiding |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman and Justice Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not abuse its discretion in admitting witness' prior consistent statement where the witness' motive to lie arose after the statement was made.

¶ 2   Defendant Isaac Sharp was convicted of three counts of unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2016)) and sentenced to concurrent sentences of 5 years' imprisonment on each count. Defendant appeals, arguing that the trial court abused its discretion in admitting a witness's prior consistent statement. We affirm.

¶ 3                                                    BACKGROUND

¶ 4          On November 1, 2017, defendant was a passenger in Lyft car that was pulled over for a traffic violation. The police recovered three guns and ammunition in the car. Defendant was charged with multiple counts of UPWF, including unlawful possession of ammunition.

¶ 5          Prior to trial, the court was advised that the State's witness, Ahmed Chafai, had inquired about a U Visa[1] and the State "provided him with some information regarding that." The court denied the State's request to "exclude anything" about Chafai inquiring about a U Visa, finding that Chafai's "belief or his hope that it would help him" indicated "potential bias on his part." The court also ruled that if the defense inquired about the U Visa, the State could go into Chafai's "prior consistent statement indicating that he said whatever he said way back when before any motive regarding immigration" arose. The court also did not believe "that would have been a realistic motive on his part to anticipate that the police could help him with immigration problems."

¶ 6          At trial, Chafai testified that around 9:00 p.m. on November 1, 2017, he was working as a Lyft driver near the 1400 block of 69th Street when he received a notification to pick up an individual "around that area." He picked up a woman and two men and identified defendant as one of the men. They told him that the address in the "computer" "was the wrong destination and [he] should drive them four blocks down to another destination." When they arrived, defendant and the man "went into [a] house [for] a couple minutes" and returned to the car with two bags.

---

[1] U Visas "allow the victims of certain statutorily designated crimes *** who have been or are likely to be helpful to authorities in investigating or prosecuting that crime, to remain in the United States as lawful temporary residents despite being otherwise subject to removal." *L.D.G. v. Holder*, 744 F.3d 1022, 1024 (7th Cir. 2014).

Defendant sat behind the passenger seat, the woman sat in the middle back seat, and the other man sat behind Chafai. Defendant told Chafai that there was a PlayStation game in the bag.

¶ 7     Chafai "started driving back to where [he] originally picked them up." Defendant told him, "You're going too fast" and "You should slow down." Chafai saw a police car behind them. As Chafai was about to pull over, the man sitting behind the driver's seat hopped out of the car and started running. Defendant and the woman were "moving around a lot, they were putting stuff away *** hectically moving their hands and bodies everywhere all around the backseat *** like hiding, putting stuff everywhere," but Chafai could not see what they were doing.

¶ 8     Two officers approached and after Chafai gave them his license and insurance, they started searching his car. The police recovered "some guns," which did not belong to Chafai. He had only one prior fare that night and "checked to see if they left anything behind in the backseat and all around the car," but did not see any bags or guns.

¶ 9     On cross-examination, Chafai testified that he was taken to the police station, where he was questioned with one hand handcuffed to the wall. He was not "afraid [the police] were arresting [him] for the guns" because he "knew they weren't [his]," but he was "scared" that he was being "investigated for the guns." Chafai was not a United States citizen and "months" after the incident, he "spoke to somebody over the phone in [the] courthouse" to ask for help regarding a U Visa. He did not know who he spoke to, but it was not a State's Attorney.

¶ 10    On re-direct examination, Chafai testified that he spoke to the police the night of the incident and "agreed" to give them a statement on video. In response to the State's question, "And that night on November 1st, 2017, what you told the police, is that the same thing that you told us today in court?" Chafai responded, "Yes," adding that he was not promised or guaranteed anything in exchange for his testimony.

¶ 11    On November 1, 2017, Officer Danny Arroyo was on duty in a marked police car with his partner, Officer Michael Appelhans. Around 9:00 p.m., Arroyo observed an "SUV-type" car driving with a "taillight out" near 1438 West 69th Street. When he turned on the lights and sirens to attempt a traffic stop, "[t]he car pulled over to the right, and someone from the backseat ran from the vehicle" on the driver's side. Arroyo put a message out over the radio describing the passenger that fled, but they did not pursue him.

¶ 12    Arroyo approached the passenger side of the vehicle and Appelhans approached the driver's side. Arroyo saw a woman in the backseat and defendant in the back passenger seat. He asked them to step out of the vehicle. Appelhans looked in the car and motioned to Arroyo to "alert him that there [were] weapons in the vehicle." Arroyo looked inside the car and "immediately" saw a shotgun with the barrel "hanging out of a bag," pointed toward where defendant had been seated, and a revolver on the passenger floorboard.

¶ 13    Appelhans testified that as he spoke to the driver, he "saw two other individuals in the back." He opened the rear door, shined his flashlight inside the car, and saw a woman sitting in the middle of the backseat and defendant sitting behind the passenger seat. Arroyo was "having the two passengers exit *** behind the passenger side." Appelhans "peeked quick inside the backseat." He handcuffed defendant and the woman together and searched the vehicle. Upon his "initial examination," he "saw a revolver *** on the floorboard behind the passenger seat and the barrel of a gun coming out of a backpack."

¶ 14    Appelhans recovered a "disassembled" New England Firearms shotgun from inside a backpack on the backseat floorboard "between the middle and the passenger seat." He also recovered a .32 caliber revolver from "the floorboard right behind the passenger seat" and a .38 caliber revolver "underneath the passenger seat." Ammunition was found in one of the bags and

Arroyo testified that another responding officer recovered ammunition on defendant's person. Appelhans inventoried the guns, which were admitted into evidence at trial. Footage from Appelhans' body-worn camera was played for jury.

¶ 15      The parties stipulated that defendant had been convicted of a qualifying felony offense for UPWF. The parties further stipulated that Robert Franks, an evidence technician for the Chicago Police Department, examined the firearms for fingerprints and there were no "ridge impressions, also known as fingerprints."

¶ 16      The jury found defendant guilty of UPWF of the three guns, but not guilty of unlawful possession of the ammunition. The trial court denied defendant's motion for a new trial and sentenced him to three concurrent terms of five years' imprisonment.

¶ 17                                    ANALYSIS

¶ 18      Generally, a prior consistent statement made by a witness is inadmissible to corroborate the witness' trial testimony. *People v. Heard*, 187 Ill. 2d 36, 70 (1999). However, "[t]here are two distinct exceptions to this rule: (1) where the prior consistent statement rebuts a charge that a witness is motivated to testify falsely, and (2) where the prior consistent statement rebuts an allegation of recent fabrication." *People v. Donegan*, 2012 IL App (1st) 102325, ¶ 52 (citing *People v. Richardson*, 348 Ill. App. 3d 796, 802 (2004). Under both exceptions, the prior consistent statement must have been made *before* the alleged fabrication or motive to lie arose. *Richardson*, 348 Ill. App. 3d at 802. A trial court's ruling on the admission of evidence will not be disturbed absent an abuse of discretion. *People v. Terry*, 312 Ill. App. 3d 984, 995 (2000). An abuse of discretion occurs where the trial court's decision is "arbitrary, fanciful or unreasonable [citation] or where no reasonable person would agree with [its] position." *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 19        Defendant argues that "[t]he trial court erred in admitting Chafai's testimony about his prior consistent statement because Chafai had motive to testify falsely before making it."[2] Defendant concedes that he has forfeited this argument by failing to include it in his posttrial motion. See *People v. Johnson*, 238 Ill. 2d 478, 484 (2010) (defendant forfeits appellate review of error if he fails to object at trial and include the error in a posttrial motion). Nevertheless, he urges us to review the issue under the first prong of the plain error doctrine, or, alternatively, as a matter of ineffective assistance of counsel.

¶ 20        Under the first prong of the plain error doctrine, we may consider unpreserved error when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Similarly, a defendant asserting ineffective assistance of counsel must show that (1) counsel's performance was objectively unreasonable and (2) there is a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.' " *People v. Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)). Under either theory, defendant must establish that an error occurred. *People v. Cox*, 2017 IL App (1st) 151536, ¶ 52.

¶ 21        Defendant argues that the trial court abused its discretion in admitting Chafai's prior consistent statement because (1) Chafai was not a citizen of the United States and (2) he "was a suspect," and therefore had motive to lie at the time he made the statement.

---

[2] Defendant maintains that the trial court admitted "multiple prior consistent statements," arguing that Chafai made a separate videotaped statement to police. The record shows that Chafai "agreed" to give a videotaped statement and without additional evidence of a separate statement, we find that the trial court only admitted one prior consistent statement.

¶ 22    Chafai's motive to lie arose when he inquired about a U Visa, "months" after he gave his statement to the police, and the State properly used his prior consistent statement to rebut the inference that he was lying at trial to receive help in obtaining a U Visa. Defendant relies on *People v. Austin*, 123 Ill. App. 3d 788, 797 (1984), to argue that because Chafai was not a United States citizen, he "might have reasonably feared that he would be deported," however, the *Austin* court held that "an *illegal alien* *** might be vulnerable to pressure, real or imagined, from authorities." (Emphasis added.) Chafai did not testify that he was in the United States "illegally" when he gave his statement to the police. Because there is no evidence that Chafai had motive to lie to receive help with his immigration status at the time his statement was made, the trial court did not abuse its discretion in admitting his prior consistent statement. See *People v. Williams*, 147 Ill. 2d 173, 227-28 (1991) (trial court did not abuse its discretion in admitting witness's prior consistent statement, rejecting defendant's argument that witness had the "same motive to fabricate at the time [she gave the statement] as she did at trial"); *People v. Ursery*, 364 Ill. App. 3d 680, 687 (2006) ("The circuit court did not err by admitting [witness'] one-word affirmation acknowledging that he had given a statement to the police *before* the five warrants for his arrest were quashed").

¶ 23    Relying on *People v. Wiggins*, 2015 IL App (1st) 133033 and *People v. Terry*, 312 Ill. App. 3d 984 (2000), defendant also asserts that the trial court erred in admitting Chafai's prior consistent statement because Chafai "was a suspect" and therefore had motive to lie to the police. In *Wiggins*, the police questioned the witness about a shooting for which the defendant was ultimately charged. 2015 IL App (1st) 133033, ¶ 38. The witness was kept in a "small windowless room for several hours," and the police "told him a witness had already identified him in connection with the shooting." *Id.* The witness identified the defendant as the shooter in a

signed statement and during trial. *Id.* At trial, the State read his entire statement to the jury to rebut the defense's argument that he was lying. *Id.* We held that the trial court abused its discretion in admitting the witness's prior consistent statement because "[o]nce the police brought [the witness] to the police station for questioning and told him that a witness identified him in connection with the shooting, [he] had a motive to fabricate a story blaming someone else for the shooting." *Id.* ¶ 40.

¶ 24        Similarly, in *Terry*, the trial court improperly admitted a witness' prior consistent statements identifying defendant as the shooter. 312 Ill. App. 3d at 995. There, the witness was "taken in for questioning at the police station, where he remained for two days." *Id.* at 988. At trial, the witness' credibility was attacked and, in response, the State elicited testimony that the witness identified the defendant as the shooter in both co-defendants' trials. *Id.* We held that "the State improperly questioned [the single eyewitness] about whether he consistently identified defendant at the prior trials" because the "statements were not made until after [the witness] arguably had a motive to testify falsely—upon his questioning over a two-day period, which may have meant that he was a suspect." *Id.* at 995.

¶ 25        In this case, Chafai testified that he was not afraid that he was being arrested for the guns because he knew that the guns were not his and Arroyo clarified that all three occupants of the car were merely "detain[ed] *** for an investigation." There is no evidence that Chafai was told he was implicated as the one who possessed the guns, that he had a reason to shift the blame to defendant, or that he was questioned for as long as the witnesses in *Wiggins* and *Terry*. The trial court did not abuse its discretion in admitting Chafai's prior consistent statement.[3] See *People v.*

---

[3] Because the exceptions outlined above are "separate exceptions" (see *People v. Mullen*, 313 Ill. App. 3d 718, 730 (2000)), we need not address defendant's argument that "there was no charge of a recent fabrication for purposes of making Chafai's prior statements admissible."

*Doehring*, 2021 IL App (1st) 190420, ¶ 115 (prior consistent statement properly introduced to rebut counsel's charge that witness motivated to testify falsely to evade prosecution and to help his brother); see also *Williams*, 147 Ill. 2d at 227-28 (rejecting defendant's argument that witness "must have considered" that "her best strategy was to cooperate with the authorities in fabricating a version of events" at the time she made the prior consistent statement). Absent an underlying error, defendant's claim that counsel was ineffective for failing to raise this issue in a posttrial motion also fails. See *Ursery*, 364 Ill. App. 3d at 688.

¶ 26      Regardless of whether the trial court erred, Chafai's "prior consistent statement amounts to a 'mere acknowledgment' of having made" the statement and because the evidence of defendant's guilt is substantial, he "does not suffer prejudice and the application of the plain error rule is unwarranted." See *People v. Long*, 2018 IL App (4th) 150919, ¶¶ 78-79. Chafai testified that there were no guns or bags in his car after his only prior fare that night and the officers' testimony, corroborated by Appelhans' body-worn camera footage, shows that defendant was sitting right where the guns were recovered. Defendant was sitting behind the passenger seat, from under which the revolvers were found, and the shotgun was hanging out of a bag between the middle and rear passenger floorboard, pointed toward the rear passenger seat. In light of the substantial evidence of defendant's guilt, he was not prejudiced by Chafai's "mere acknowledgment" that he made a prior consistent statement. See *People v. Williams*, 264 Ill. App. 3d 278, 288-89 (1993) (admission of prior consistent statement not reversible error where "none of the witnesses testified as to the substance of their prior statements. They were asked whether they had told the police or the grand jury the same story they had told in court, to which each simply replied yes.").

¶ 27                                          CONCLUSION

¶ 28        Accordingly, we find that the trial court did not abuse its discretion in admitting the prior

consistent statement.

¶ 29        Affirmed.